THOMAS F. BURTNETT, ADM'R OF THE ESTATE OF WILLIAM BURTNETT v. THE FIRST NATIONAL BANK OF CORUNNA.

*Recovery of funds deposited by an agent and appropriated by the depositary to pay the agent's personal debt.*

Where an agent or trustee has deposited money belonging to his principal or beneficiary in a bank to which he is himself indebted, and the bank, without his authority and in ignorance of the true ownership of the fund, has applied it on the debt, the owner is not debarred from recovering it from the bank if it can be identified.

Error to Shiawassee. Submitted April 5. Decided April 16.

ASSUMPSIT. Plaintiff brings error.

*Gould & Lyon* and *Austin Blair* for plaintiff in error. Property or the proceeds of it can be recovered by the owner wherever it can be traced in the hands of an agent or his assignees unless it has been transferred for value without notice, *Taintor v. Pendergast,* 3 Hill, 72; *Denston v. Perkins,* 2 Pick., 86; *United States v. Nat. Bank of Boston,* 17 Alb. L. J., 188; 2 Kent's Com., 863.

*Aug. C. Baldwin* for defendant in error. Money deposited in a bank in an agent's name with his own funds cannot be identified and is held to be his in any litigation between the principal and a third person, *Beatty v. McCleod,* 11 La. Ann., 76; the deposit creates a debt and not a bailment, *Wray v. Tuskegee Ins. Co.,* 34 Ala., 58; *Robinson v. Gardiner,* 18 Grat., 509; the title to money paid into a bank as a deposit, and passed generally to the depositor's credit, passes to the bank, which may apply the payment to any overdue demand they have against the depositor, *Garnett v. M'Kewan,* 4 Eng., 419; *In re, European Bank,* id., 745; *Demmon v. Boylston Bank,* 5 Cush., 194; *Com. Bank of Albany v. Hughes,* 17 Wend., 94; *Graves v. Dudley,* 20 N. Y., 76; *Marsh v. Oneida Cent. Bank,* 34 Barb., 298; *School Dist. v. Nat. Bank,* 102 Mass., 174; *State Bank v. Armstrong,* 4 Dev. (Law), 519; *Ford v. Thornton,* 3 Leigh, 695; *Whittington v. Farmers' Bank,* 5 Har. & J., 489; *Oddie v. Nat. City Bank,* 45 N. Y. 735; national banks are not authorized to take special deposits and are not liable for their loss, *Wiley v. First Nat. Bank of Brattleboro,* 47 Vt. 546; *Weckler v. First Nat. Bank of Hagerstown,* 42 Md., 581; *First Nat. Bank of Lyons v. Ocean Nat. Bank,* 60 N. Y., 278; *Foster v. Essex Bank,* 17 Mass., 478; nor is a bank liable for a loss of a special deposit occasioned by the act of the owner's agent who deposited it, *De Feriet v. Bank of America,* 23 La. Ann., 310.

GRAVES, J.  This action, was brought by William Burtnett in his life-time to recover a little over a thousand dollars claimed to have been received by the bank upon a bond issued by the city of Corunna and by him owned.  In the progress of the cause he died and his administrator was allowed to assume the further direction of proceedings.

Upon the trial the jury found for the bank and the case has been removed to this court in order to obtain a review of particular rulings made in the circuit court.

The plaintiff in error has been fully heard but we have not been favored with either argument or brief on the part of the bank.*

As the hearing has consequently been wholly *ex parte,* it is not considered prudent to go further than is actually necessary to dispose of the case.

The bond was issued by the city January 31st, 1870, to the decedent.  It was made payable in three years with semi-annual interest at ten per cent. at defendant's banking house and was there lodged.

At the time of its issue or just before that, decedent commenced doing business at the bank, and Spencer B. Raynale was then cashier and continued so until the following January, and the evidence tended to show that he obtained the bond of the city for Mr. Burtnett and acted for him thereafter in other transactions and made several loans to parties for him and received payments upon certain of his demands.

About the first of January, 1871, Mr. Raynale ceased being an officer of the bank and employed himself in law business.  He kept an account at the bank and appears to have had the confidence of its managers. He left papers in its vault for safe keeping, and the evidence tended to show that decedent's bond was with them.

---

*After this opinion had been prepared a brief was received by the judges from counsel for the bank.  It has been examined, but the court thinks it contains nothing which ought to vary the result reached.

March 24, 1874, and when the bond was past due and still owned by decedent, the city arranged with Mr. Raynale to pay it and take it up. Decedent had no knowledge of the transaction. Mr. Raynale sent an order to the bank for the bond and it was handed out accordingly. There was then due of principal and interest, the sum of $1015, and the city gave him in payment a check for $1000 and $15 in money and he surrendered the bond. Soon after and on the same day, he deposited the $15 and the check for $1000 with the defendant bank and requested that it might be credited to his account and it was done. The check was immediately collected. He soon afterwards checked out $229.29, and becoming too unwell to do business he went to his father's in Oakland county, where he died in September of the same year. The evidence tended to show that he was indebted to the bank in a sum greater than the amount left of the sum paid on the bond, and was insolvent. The bank assuming the right to apply what remained in its possession of the proceeds of the bond on Raynale's debt, proceeded to effect that result by entries in its books.

The evidence conduces to show that decedent Burtnett had no knowledge of the payment and surrender of his bond or of the conversion of the proceeds to the payment of Raynale's debt to the bank until long after the transactions and after the death of Raynale, and on the other hand there is no evidence fairly tending to prove that he authorized Raynale to transact this business or contemplated that he should collect the principal of the bond and lodge it in the bank. Neither is there any evidence fairly tending to prove that Burtnett ever in fact parted with any right or interest he was entitled to as owner. And the case is clear that all the bank did was to receive from Raynale the proceeds of Burtnett's bond and then to appropriate all, except the small amount checked out, to the payment of its debt against Raynale. This outline is sufficient to present the main

3S MICH.—80.

point and the only one to be noticed now. It is gathered from the case that no recovery was claimed for the $229.29 paid out on Raynale's checks and hence that portion and the questions which a controversy about it might cause, are not involved. The subject of contention is the balance not taken out of the bank. And in regard to that the circuit judge was of opinion that conceding decedent's ownership of the bond and of the proceeds in Raynale's hands, and that his ownership continued down to the time of Raynale's deposit in the bank, and that he did not entrust the check and money to Raynale nor authorize the deposit, and conceding further that the balance in question of the proceeds remained in the bank when the action was commenced,—that still the plaintiff would not be entitled to recover unless the jury were satisfied of the further fact that the bank officers knew decedent was owner of the check and currency when Raynale placed them in the bank on the 24th of March. This knowledge of decedent's ownership by the bank officers was thought by the circuit judge to be indispensable to a recovery. He said: "Now, gentlemen of the jury, if you should be satisfied from the evidence in this case that the officers of the bank at the time Mr. Raynale made this deposit of this thousand dollar check and this fifteen dollars in currency, knew that it belonged to the plaintiff, then the plaintiff is entitled to recover. If you are not satified of that fact from the evidence, then your verdict will be for the defendant. That, in my view of the case, is the important question to be determined by the jury."

We cannot concur with the circuit judge. If decedent owned the proceeds of the bond on the 24th of March when Raynale made the deposit, the mere fact, if it is a fact, that the bank officers were ignorant of such ownership or the mere fact of their formal transfer on the bank books of such proceeds to satisfy the debt due

the bank from Raynale, if there was such a debt, or both facts together could not extinguish Burtnett's right, or bar recovery as to the fund left in the bank if capable of being traced. Had it been satisfactorily shown that Raynale actually participated in and assented to the appropriation attempted by the bank, the latter being ignorant and without any reasonable notice of decedent's rights, there might be room for other considerations. But we are not aware of any principle which will enable a depositary who has received from a trustee or agent a fund belonging in fact to the principal or beneficiary, to appropriate it by his sole act to his own debt held against the trustee or agent and thereupon to insist that his want of knowledge of the true ownership is sufficient to guard such inequitable appropriation and bar the real owner from pursuing the fund.

On the contrary the doctrine is well settled that the principal or beneficiary may in such cases follow and claim his own. The following cases are sufficient to illustrate it: *Pennell v. Deffell,* 4 De G., M. & G., 372: 23 E. L. & E., 460; *Van Alen v. American National Bank,* 52 N. Y., 1; *Butler v. Sprague,* 66 N. Y., 392; *Atlantic Bank v. Merchants' Bank,* 10 Gray, 532; *Skinner v. The Merchants' Bank,* 4 Allen, 290; *Broderick v. Waltham Savings Bank,* 109 Mass., 149; *Cook v. Tullis,* 18 Wall., 332; *Clark v. Iselin,* 21 Wall., 360; *Merrill v. Bank of Norfolk,* 19 Pick., 32; *Haddow v. Lundy,* 59 N. Y., 320; *Wood v. Stafford,* 50 Miss., 370; *Gray v. Perry,* 51 Ga., 181; *Brockville v. Sherwood,* 7 Grant's (U. C.) Ch., 297; *Sheridan v. Joyce,* 1 Jones & La Touche, 401; *Bodenham v. Hoskyns,* 2 De G., M. & G., 903; *Arnold v. Cheque Bank,* 1 Com. P. Div., 578; *Overseers of the Poor v. Bank of Va.,* 2 Gratt., 544; *Frith v. Castland,* 2 Hem. & Mil., 417.

For the error noticed the judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.