L. W. McLennan and C. O. Breed, Appellees, v. The Farmers' Savings Bank of Arispe, Iowa, Appellant.

Banks and banking: APPLICATION OF DEPOSITS. A bank cannot apply the proceeds of property coming into its hands by inadvertence or mistake and in the name of one who has no interest therein, to the satisfaction of the debts of such party, as against the owner in fact of the property.

*Appeal from Union District Court.*— Hon. H. K. Evans, Judge.

Tuesday, October 23, 1906.

ACTION to recover a sum of money received by defendant as the proceeds of certain hogs shipped from Shepard in Union county, this state, to St. Joseph, Mo. It is claimed that the hogs belonged to plaintiff, and that by mistake they were shipped in the name of one J. R. Webb, and that when the bank received the proceeds of the shipment it wrongly applied it upon a debt owing it by said Webb. Defendant denied practically all the allegations of the petition, and upon a trial to the court, a jury being waived, judgment was rendered for plaintiff, and defendant appeals.— *Affirmed.*

*Sullivans & Fry,* for appellant.

*H. P. Armitage* and *Milligan & Lee,* for appellees.

Deemer, J.— C. O. Breed was a stock buyer, and J. R. Webb was his agent, who, upon commission, purchased hogs for shipment. After Webb purchased stock he furnished a statement to Breed, and he (Breed) paid for the animals bought, and shipped them in his own name. At the time of the transaction in question Webb was indebted

in a large amount to the defendant, the Farmers' Bank, upon his own account. Webb had purchased hogs for Breed to the amount of $44.65, and for which Breed had paid, when he (Breed) was called away from home, and, as a full car load had not been purchased, and as Webb was without funds and irresponsible, it was arranged between Webb and plaintiff McLennan, who was cashier of the Citizens' Bank of Afton, that he (McLennan) would furnish the funds necessary to make up a car load of hogs upon condition that the hogs were to belong to McLennan, be shipped in the name of his bank, and the proceeds to be returned thereto; Webb to have no interest therein save his commission. Pursuant to this arrangement, Webb purchased enough hogs to make up a car load, drawing his own checks upon the Citizens' Bank of Afton in payment therefor. These checks were paid by McLennan, but were not entered upon the books of the bank; the checks being used simply as a means of settlement between Webb and McLennan. When the car was ready for shipment, Webb, without the knowledge or consent of either of the plaintiffs, and entirely upon his own motion, directed that it be sent to a commission firm in St. Joseph, Mo., with which he (Webb) had theretofore done business, and in conformity to a prior custom, and without express direction from any one, this commission firm remitted the proceeds of the car of hogs, or sent a letter of advice to the defendant bank for the credit of Webb. Upon the receipt of this advice, defendant applied the amount thereof upon Webb's past-due indebtedness to it. Plaintiffs, Breed and McLennan, bring this action to recover the proceeds of the hogs, claiming that the animals were by mistake billed and shipped in the name of Webb, who was a mere agent for the plaintiffs, and that they in fact were and are the owners of the hogs and the proceeds thereof; Webb having no interest therein save his commission. No question is made regarding the joinder of plaintiffs, nor is there any issue regarding their right to sue. Something is said in argument

about these propositions, but it affirmatively appears that they were not presented to or passed upon by the trial court. We go, then, directly to the merits.

Counsel for defendant contend that the proceeds from the sale of the hogs came into the possession of the bank as the property of Webb without notice that any other person had any claim or right thereto, and that it was legally justified in applying same upon Webb's indebtedness to it. They rely upon *Waters v. Bank,* 65 Iowa, 234; *School Dist. v. Bank,* 102 Mass. 174, and other cases. In our opinion, these cases are not applicable to the facts now before us. Here the hogs were to be and were the property of the plaintiffs. Without their knowledge or consent they were shipped in the name of Webb, he having no title thereto. The commission house, without direction from any one, but relying upon a previous custom, caused to be deposited in the Stock Yards Bank at St. Joseph, Mo., for the credit of defendant, the proceeds of the hogs as coming from J. R. Webb. Upon the receipt of " advice " of this deposit, defendant credited the amount thereof upon various notes which it held signed by Webb. Defendant received nothing but this advice from the St. Joseph bank, and it is manifest that the law merchant has nothing to do with the case. Webb made no deposit with the defendant or with the St. Joseph bank, and he did not direct that returns should be made to defendant, or deposits made to its credit on his behalf. Neither of plaintiffs gave directions that the stock should be shipped in Webb's name, or that Webb should have credit with the proceeds, nor did Webb direct the shipment in his name.

The sole question is, who is entitled to the proceeds of these hogs ? There are no equities in defendant's favor, for it came into possession of the funds, or such possession as it had, solely through a mistake, and without any laches on plaintiffs' part. If the hogs belonged to plaintiffs, they are, under this record, entitled to the proceeds thereof.

The action is at law, and, if there be any evidence to

sustain the finding of the trial court upon this proposition, the judgment should be affirmed. Turning to the record, we find ample evidence that Webb was buying for Breed simply upon commission, that he had no interest in the hogs, and that he (Breed) did not authorize Webb to ship in his own name. After Breed left home, Webb explained the situation to McLennan, and McLennan told Webb to check on him, and have the returns come to the Citizens' Bank of Afton. When the shipment came to be made, no directions were given the station agent as to whose name in which to ship them, but upon his own motion he used the name of Webb as consignor. Webb did not at any time, and does not now, claim to own either the hogs or the proceeds. It very satisfactorily appears that Webb had no interest in the hogs save to the extent of his commission, and that the shipment was made in his name through mistake of the railway agent, and not by any direction of the parties in interest. The placing of the credit to the defendant bank in the St. Joseph bank was the result of a mistake on the part of the commissionmen, and not by direction of any party to this litigation. In these circumstances, it surely cannot be seriously claimed that defendant is entitled to the money as against the true owner. No cases have been cited which so hold, and we do not think that any can be found. If Webb were a trustee, and, as such, had intentionally made a deposit in defendant's bank, and defendant had received it without notice of its trust character, and had applied it upon Webb's indebtedness, we should have an entirely different case; one to which the authorities cited by appellant might apply. But that is not the situation here. There was no trusteeship except *ex malefacio,* and there was no deposit by the trustee. The deposit, such as it was, was by another, without any authority or direction in the premises. Such a deposit should not be held to deprive the plaintiffs of their property or of its proceeds. *Cady v. Bank,* 46 Neb. 756 (65

N. W. 906), supports this conclusion.  See, also, *Burtnett v. Bank,* 38 Mich. 630.

The judgment of the district court seems to be correct, and it is *affirmed.*